### Bender v. Bender

Before Bertolet, Eshelman and Edenharter, JJ.

*Robert L. Van Hoove*, for plaintiff.
*Arthur Ed. Saylor*, for defendant.

BERTOLET, J., November 17, 1972.—This matter arises on a defendant wife's petition to open a decree of divorce, obtained against her by her husband, and be let into a defense.

The proceedings leading up to the decree of divorce were regular on their face. The complaint was filed August 10, 1964, in which defendant's last known address is stated to be "1351 72nd Street, Brooklyn, New York, c/o Joseph Defina." The sheriff on February 9, 1965, having made a return of "Not Found," defendant was served constructively by publication in a local newspaper (Kutztown Patriot) and law journal in February and March 1965. The sheriff's registered mail notice sent to the above-mentioned address on February 18, 1965, was returned marked "Unclaimed." A master was appointed and proceeded in due course. The master fixed May 10, 1965, at 11 a.m., as the time for a hearing and sent notice of such hearing by registered mail addressed to defendant at her stated last known address, viz., 1351 72nd Street, Brooklyn, New York, c/o Joseph Defina, on April 15, 1965, which registered mail letter was returned marked "Unclaimed." The master's hearing was held on May 10, 1965, and his report filed on May 21, 1965, notice of the filing of the master's report and recommendation having been

mailed by registered mail addressed to defendant at said Brooklyn address on May 25, 1965, which registered mail letter was returned to the master marked "Moved—Left No Address." A decree of divorce was handed down on June 7, 1965.

From the foregoing it would appear that defendant had received no official notice of the divorce proceeding other than by publication.

The instant petition was filed on September 10, 1971, plaintiff filed an answer thereto with new matter on February 2, 1972, and defendant's answer to the new matter was filed on March 2, 1972. Thereafter, depositions of the wife were taken on March 16, 1972; none were taken of the husband.

From the depositions it would appear that the parties last lived together with their daughter in Vienna, Austria, until the husband left on March 20, 1960, for the stated purpose of obtaining employment in New York. The wife and their daughter continued to reside in Vienna until January 1969. From 1964 or earlier and until October 1968, the wife's street address was Mohsgasse 37/38, Vienna 1030 Austria, which address was known to the husband. The wife and daughter visited in New York from July 1, 1964, to the end of September, 1964, staying at an unstated address, not the one set forth in the complaint, although the latter was the address of a cousin of the wife, and as she (the wife) said, "That was the only place I could be addressed to." The husband knew that the wife was in New York, she having gone to his place of employment in Long Island the day of her arrival. The husband continued to send support money to the wife and daughter at the rate of $300 per month until December 1965, and for an unstated time thereafter in a lesser amount, and continued to write to them at said address in Vienna, Austria, at least through July 1966, without

ever mentioning the divorce proceedings. The wife first learned of the divorce proceedings from third parties in the spring of 1967. She then made an attempt by correspondence to obtain a local attorney but was unsuccessful because she was unable to pay a retaining fee, there then being no free legal aid services for divorce matters. She delayed coming to the United States until after the graduation of their daughter in 1968, finally leaving Vienna for this country on January 23, 1969. Increasing chronic illnesses and want of funds delayed further legal action until she came to this county in March 1971, when she took further steps to obtain counsel resulting in the present petition. She denies her husband's charges of indignities and desertion and alleges that she has a good defense.

We are of the opinion that it is a reasonable inference from the foregoing that plaintiff-husband, from his failure to cause defendant-wife to be served personally or by mail or otherwise inform her while she was in New York, and from his failure to advise her after she returned to Vienna, when he knew or could have known that she had no direct official knowledge of his divorce proceedings, and as far as appears no other knowledge, has committed such fraud on defendant-wife as now entitles her to have the divorce decree opened and be let into a defense. See 3 Freedman: Law of Marriage and Divorce in Pennsylvania (2d ed., 1957), §724.

Defendant further raises the question of plaintiff's residence in Pennsylvania, but there is insufficient evidence before us at this time for us to pass on that point.

Defendant also contends the applicability of Pennsylvania Rule of Civil Procedure 1124(c), requiring notice to a diplomatic or consular representative of a

foreign country having an office in this Common-wealth, but there is no evidence of the existence of such an office.

Plaintiff raises the issue of laches, but we do not think that the evidence now before us gainsays defendant's claims of illness and lack of funds. Suffice it to say that the cases indicate that the courts are much more lenient in considering laches in opening divorce decrees than in other types of default judgments.

The prayer of the instant petition is hereby granted, the decree in divorce dated June 7, 1965, is opened, the parties are permitted to file further appropriate pleadings, the first to be filed within 50 days of this date, and at the close of the pleadings either party may request the appointment of a master to take further testimony, in addition to that already taken at the original hearing, and to make a report and recommendation to the court.